## CAUTHEN *v.* CITY OF CANTON.[*]

(Division B.   Nov. 8, 1926.   Suggestion of Error Overruled Nov.
22, 1926.)

[110 So. 123.   No. 25913.]

1. MUNICIPAL CORPORATIONS.   *City, using natural drain, is not liable to property owner because paved streets accelerate flow of water.*

   Where a city uses a natural drain as a drain of the city, but does not cast any waters into such drain except such as naturally flow therein, it is not liable to a property owner for damages to his property flowing from accelerating the flow of water in the drain by reason of its paved streets hastening the flow of the water.

2. MUNICIPAL CORPORATIONS.   *In suit for damages from city's culvert causing water in drain to become stagnant, proof must show such conditions existed at time of filing suit.*

   In a suit for damages to property for the negligent construction of a culvert which, it is alleged, caused the water in a drain to become stagnant, filthy, foul-smelling, and unwholesome, etc., the proof must show that such conditions existed at the time or before the filing of the suit as the right must exist at the time of the filing of the suit.

---

[*]Corpus Juris-Cyc. References: Municipal Corporations, 28 Cyc, p. 1315, n. 48; p. 1328, n. 41.   On right to drain surface water into natural watercourse, see note in 28 A. L. R. 1262; On right of municipality·to hasten flow of surface water along natural drainways by improvement of street or highway, see notes in 5 A. L. R. 1530; 36 A. L. R. 1463.   27 R. C. L. 1156; 3 R. C. L. Supp. 1547; 5 R. C. L. 1495; 6 R. C. L. Supp. 1690.

APPEAL from circuit court of Madison county.

HON. W. H. POTTER, Judge.

Two suits by Mrs. C. H. Cauthen against the city of Canton for damages to property.   From judgments for defendant in both suits, plaintiff appeals.   Affirmed.

*Powell, Harper & Jiggitts,* for appellant.

The court below erred in granting a peremptory instruction in favor of the defendant. A. Appellant will first consider the "Nuisance" case. The plaintiff introduced abundant testimony at the trial of this case to show that the culvert was negligently constructed and was negligently maintained. This testimony showed that water continually stands in the culvert because of the negligent construction and maintenance by the defendant, city of Canton; that the stenches arising from the stagnant water are revolting; that the mosquitoes have become dangerous and unbearable; and that the salable value of her property has been decreased one thousand dollars. This testimony was never challenged and was never rebutted.

The law making a municipal corporation liable for maintaining a nuisance such as this is too well established to admit of argument. *Bolton* v. *New Rochelle,* 84 Hun. 281, 32 N. Y. Supp. 442; *Owens* v. *Lancaster,* 193 Pa. 436, 44 Atl. 559; 2 Farnham on Water and Waterways, p. 913; *Fewell* v. *Meridian,* 90 Miss. 380; *McCarthy* v. *Syracuse,* 46 N. Y. 194; *Bloomington* v. *Murnin,* 36 Ill. App. 647; *Lindsey* v. *Sherman,* 36 S. W. 1019.

Plaintiff made out an excellent case against the defendant showing cause of action and damage resulting from the negligence of the defendant.

B. In the "Ditch" case which we will now consider there are two counts in the declaration. The first count of the declaration alleges that the city was negligent in the maintenance of this established drain, which it had been using for years. The city built a culvert over the street in the path of this drainage ditch. There is some uncertainty as to the origin of the ditch; but whether natural or artificial, the liability of the city remains the same.

The testimony shows that before the present culvert was built, the ditch drained properly. Since the build-

ing of this culvert, overflows have been frequent and plaintiff's property has been greatly damaged. The city of Canton is liable for obstructing this ditch or stream by placing across the road and in the very bed of the ditch an insufficient and totally inadequate culvert. The law is well established in this respect. See *Haynes* v. *Town of Burlington*, 38 Vt. 350; *Frostburg* v. *Dufty*, 70 Md. 47, 16 Atl. 642; *Valpraiso* v. *Ramsey*, 11 Ind. App. 215; *Rochester White Lead Co.* v. *City of Rochester*, 3 N. Y. 463.

The second count alleges that the city has used this drainage system for a great number of years and has acquired a right to drain a certain amount or quantity of water into the ditch; that the city brought more water into the ditch in the last few years and has thus increased the rapidity of the flow.

*The city of Canton has adopted the ditch in question as a part of its drainage system. It is liable for any negligence in its maintenance.* 28 Cyc. 1319; *Owens* v. *Lancaster*, 182 Pa. State 257; *Blizzard* v. *Danville*, 175 Pa. St. 479; *Chalkley* v. *City of Richmond*, 88 Va. 402.

While there is no case in the state of Mississippi on the point in question, it would seem that our state has leaned distinctly toward this doctrine in *Fewell* v. *Meridian*, 90 Miss. 380.

As to the adoption of a stream as a sewer or drain by a municipality appellant see: *Owens* v. *Lancaster*, 182 Pa. St. 257; *Krauz* v. *Baltimore*, 64 Md. 491; *Bigham* v. *City of Pittsburg*, 83 Pa. Super. C. T. 449.

*Regardless of whether or not the ditch was adopted by the city as a part of its drainage system—though it certainly was adopted—the city of Canton is nevertheless liable in the case at bar.* The city had no right to drain more water into this ditch or stream than the ditch could normally contain. This, however, the city did do to the great damage of the plaintiff.

*Drainage Commissioners* v. *Drainage Commissioners*, 130 Miss. 764, is not in point. There is no possible way

in which this case could apply to the "Nuisance" case or to the first count of the declaration in the "Ditch" case. The only possible application the case might have would be to the second count of the declaration in the "Ditch" case. But even as to the second count of the declaration of that case appellant submits that there is a great distinction.

In the Drainage Commissioner's case there were a number of parties concerned in causing the damage. No one party necessarily caused the damage. It was only when each party exercised a right of drainage that the combined efforts of all parties caused the damage. In the case at bar there is only one party, the city of Canton. The city alone is responsible.

Again in the Drainage Commissioner's case there was no determining what particular party was responsible for the damage. In the case at bar only one party is clearly responsible for the damage, that party being the city of Canton.

In the Drainage Commissioner's case there was no possible way to remedy the situation. In the case at bar a remedy can be made easily, the cost to the city being comparatively slight; yet should the city be allowed to continue its depredation, the plaintiff must suffer without hope of relief. The logic in the case at bar and justice are both clearly on the plaintiff's side. *Noonan* v. *Albany,* 79 N. Y. 470 at 476.

Authorities are numerous in support of the view that a stream cannot be overburdened to the damage of a riparian owner. *O'Brien* v. *St. Paul,* 18 Minn. 182; *McArthur* v. *Dayton,* 19 Ky. L. Rep. 882, 42 S. W. 343; *Manning* v. *Lowell,* 130 Mass. 21; *Flanders* v. *Franklin,* 70 N. H. 168; *McBride* v. *Akron,* 12 Ohio C. C. 610; 6 Am. & Eng. Ency. of Law, p. 16; *Jackman* v. *Arlington Mills,* 137 Mass. 277; *McCormick* v. *Horan,* 81 N. Y. 86; *Noonan* v. *Albany,* 79 N. Y. 470; 6 McQuillin on Municipal Corporations, p. 5560.

It has been held that a municipal corporation which in improving its streets makes them impervious to water, is bound as part of its scheme of improvement to supply a system of drainage sufficient to carry off the water which may reasonably be expected to accumulate from the ordinary rainfalls of the neighborhood, so that it will not injure the abutting property owners. See *Louisville* v. *Knighton,* 30 Ky. L. Rep. 1037; also 9 R. C. L. 688, sec. 81; *Inman* v. *Tripp,* 11 R. I. 520.

*It is a recognized rule of law that a municipal corporation must take care of its surface water in such a manner as not to injure others. McCray* v. *Fairmount,* 46 W. Va. 442; *Byrnes* v. *City of Cohoes,* 67 N. Y. 204; *Indianapolis* v. *Lawyer,* 38 Ind. 348; *Terre Haute* v. *Hudnut,* 112 Ind. 542; *Carson* v. *Springfield,* 53 Mo. App. 289; 6 Am. & Eng. Ency. of Law, 22, sec. 3; *Scheuett* v. *Stillwater,* 80 Minn. 287.

*A municipality cannot take private property for public use without due compensation.* Section 17, Constitution of 1890.

*H. B. Greaves,* for appellee.

A. When these cases came on for trial, all the evidence introduced by plaintiff. proved beyond a question that the drain complained of was a natural drainage caused by the natural contour of the earth; that the city of Canton and no person had at any time dug the ditch; but that the water had to flow through this channel and could not flow in any other direction.

It is not claimed and there is nothing to show that the culvert is not properly constructed and for that reason water backs up over plaintiff's land and causes washing, but the only claim is that the water has increased in volume and runs more rapidly because the *paving prevents the ground from absorbing the surface water* which was absorbed before the paving was laid.

It is perfectly manifest that plaintiff based her case on *Harvey* v. *I. C. R. R. Co.,* 111 Miss. 835; but an exami-

nation of that case shows that it is no authority here. There is no similarity between the two. The books are overflowing with cases apparently bordering on the issue here involved and it would be idle and a waste of time to undertake to cite and comment on each case; and for that reason I cite only a few cases which are directly in point: *Drainage Commissioners* v. *Drainage Commissioners,* 130 Miss. 764; *San Gabriel Valley Country Club* v. *Los Angeles County,* 9 A. L. R. 1200; *Waffle* v. *N. Y. Co. Ry.,* 53 N. Y. 11, 13 Am. Rep. 467; *Hughes* v. *Anderson,* 86 Ala. 280, 44 Am. Rep. 147; *Peck* v. *Herrington,* 109 Ill. 611, 50 Am. Rep. 627.

The drain here involved is a natural watercourse, one of the branches to Bear Creek that flows into Big Black River, draining all of the western portion of Madison county; and this drain involved having its source in the city of Canton, some quarter of a mile southeast of appellant's residence, carries the surface water through this drain, through a lot owned by appellant, on the east margin of which drain appellant built her house.

The channel, ditch or creek here involved was not built by the hands of men, but it is a natural stream or watercourse, caused by the contour of the earth and existed before the city of Canton existed. A distinction between such a natural channel and one dug by man is recognized by all courts.

The cases of *Harvey* v. *I. C. R. R. Co.,* 111 Miss. 835; *Sturges* v. *City of Meridian,* 95 Miss. 54; *Miss. Mills* v. *Smith,* 69 Miss. 299; and *Pompey Lake Drainage District* v. *McKinney Lake, etc.,* 99 So. 387, have no application to this instant case whatever because there the drain was artificial. The rule applicable to natural watercourses applies here. A case directly in point is *Drainage Commissioners* v. *Drainage Commissioners,* 130 Miss. 764.

B. The declaration alleges that the culvert across Peace street north of and in front of plaintiff's residence was constructed within the last few years, and that near

the plaintiff's property the culvert is "open at its end." Plaintiff also alleges that because of negligent construction, water stands under this culvert and mosquitoes breed there, winding up with the tragical statement that because of said revolting stenches and said mosquitoes, life is made miserable to those who occupy property near said culvert. Damages sought equal the purchase money originally paid for the property—three thousand dollars.

All the members of appellant's family testified. Not another one testified to an unpleasant odor or mosquitoes. Furthermore, the circuit judge went with the jury and personally examined and inspected this ditch, evidently detecting no odor or mosquitoes. This is evidence that the circuit judge had a right to consider. *Hart* v. *City of Canton,* 107 So. 195.

The action of the lower court in giving a peremptory instruction was abundantly justified.

Argued orally by *Louis M. Jiggitts,* for appellant, and *H. B. Greaves,* for appellee.

ETHRIDGE, J., delivered the opinion of the court.

This record embraces two suits. The first is a suit for damages to a dwelling house and property situated on a certain ditch in the city of Canton, which is alleged to have been established by the city as a part of its drains, and that by the negligence of the city in keeping it in improper repair the water overflowed the lot of the plaintiff and washed away part of her lot because the proper precaution against erosion was not provided by the city, causing the land to cave into the said ditch, and because the city, by paving its streets, had caused additional water to be cast into the ditch or drain, which, in the ordinary course of nature, would have percolated into the ground, and that the city did not provide the proper protection from this increased flow of water by

which the flooding of lands and caving of banks of the said ditch were increased.

The second suit is for an injury to the property caused by the negligent construction of a culvert by the city of Canton across one of its streets over the said ditch, which was insufficient to take care of the water, and which, due to the negligent construction and maintenance of same, water fails to go off, and stands in the culvert and becomes stagnant and foul-smelling, filthy and unwholesome, thereby constituting a nuisance; that in this stagnant water mosquitoes breed and multiply with great rapidity, rendering the property less valuable and diminishing the enjoyment of its use by the residents.

The proof in the case shows that the ditch is a natural drain, and has always existed as such; that, while the city of Canton has adopted it as a drain for the city, it has not changed any of the natural drainage so as to cause the water to flow into the said ditch that did not flow therein by nature, except it is shown that certain streets were paved, and by being paved the percolation of waters flowing upon the land is prevented and cast into the drain, or ditch.

It is contended by the city that, inasmuch as no artificial drains empty into this ditch casting waters therein that were not accustomed to flow there, the city had the right to hasten the flow of the water occasioned by its paving of the streets. The city relies upon *Drainage District Commissioners* v. *Drainage District Commissioners,* 130 Miss. 764, 95 So. 75, 28 A. L. R. 1250, and other cases, in so far as the suit for damage to the lot occasioned by the increased flow of water and the overflow of water upon the lot are concerned. We think that the contention of the city is supported and controlled by that case, and by *Herring* v. *Lee County,* 130 Miss. 1, 93 So. 436.

In regard to the second suit, we think the proof for the plaintiff was insufficient to establish liability. The suit was filed prior to the May term, 1925, and the case

was tried in March, 1926. The proof for the plaintiff upon the nuisance feature is as follows:

"Q. How about this culvert they have constructed—does the water stand in there now? A. It does.

"Q. Explain to the jury about where that is. A. It is just a few feet from my door and in sprinkling the street the water goes under this culvert and stands there all the summer, creating an odor almost unbearable even in dry weather. It is so near the porch we can't sit on the porch; it causes a breeding place for mosquitoes. That is the evidence of one of the city's men.

"Q. Have you complained of this? A. I have.

"Q. Have the mosquitoes made it unhealthy at all? A. Very uncomfortable.

"Q. And very inconvenient? A. Yes, sir.

"Q. Are you able to sit on your front gallery in the summer months when it is hot? A. It is very unpleasant if you have to do it. We sit there, but it is very unpleasant."

This testimony was not given by the owner of the property who brought the suit, but by her daughter who lived at the place at the time of the trial, and who had been living at the place presumably with her mother for two or three years.

The proof does not show that this condition existed prior to the filing of the suit, but the questions indicate that it was a condition existing at the time of the trial. Appellee contends that this testimony as to the unbearable odor, as shown by the answers above quoted, is the evidence of the city's man and consequently hearsay. But treating it as being the testimony of the witness, and that she intended by the statement, "That is the evidence of the city's man," to show that the city's man agreed that the conditions existed, still it does not place the existence of this condition at the time of the filing of the suit and prior thereto. Of course, the rights of the parties are determined by conditions existing at and before the filing of the suit.

480 ·

The trial court granted a peremptory instruction in this suit also, and we think the judgment is correct, and must be affirmed.

*Affirmed.*