MISSISSIPPI STATE HIGHWAY COMMISSION *v.*
VALENTINE, et al.

No. 41569          November 21, 1960          124 So. 2d 690

Beard, Pack & Ratcliff, Laurel, for appellant.

George D. Maxey, E. K. Collins, Laurel, for appellee.

ETHRIDGE, J.

Appellant, State Highway Commission, filed in the County Court of the First Judicial District of Jones County, Mississippi, a petition to condemn for highway purposes a twenty acre strip of land through the Valentines' cattle farm. The jury in the county court rendered a verdict for the Valentines of $32,000. The Commission appealed to the circuit court, where the jury's verdict was $28,500. The Commission contends the verdict, upon which the circuit court's judgment was based, was so grossly excessive as to evince bias, passion and prejudice by the jury. We agree with that position.

Appellees, Mr. and Mrs. J. A. Valentine, own a 138 acre cattle farm in the first district of Jones County, southwest of the City of Ellisville. The property consists of two 40-acre tracts, one north of the other, another 40 west of the north subdivision, and an irregularly shaped tract of about 18 acres above the two north forties. Adjacent to the north portion is State Highway 590, and below it is a county road on the west side. Near the state highway and county road on the west is the residence.

The strip of land condemned by appellant contains 20 acres, is 370 feet wide, and runs in a northeasterly and southwesterly direction through the eastern portion of the farm. To the south and east of this non-access highway, there are 34 acres which are separated from the remaining 84 acres of the place to the west of the highway. Although the Commission is condemning access rights, there would be a permissive user of a viaduct under the highway from the western 84 to the eastern 34 acres. However, since the use is permissive only, the effect of the highway is to cut off access to the east tract, which is bounded on its east side by the Mississippi State Hospital at Ellisville. Hence, looking at the matter most favorably to appellees, the Highway Commission is condemning a right of way of 20 acres, and cutting off appellees' access to the 34 acres east of the highway. The condemnation does not take mineral rights under the highway.

None of the improvements upon this cattle farm are being taken by the right of way, except possibly some fencing which is not described. The residence near the northwest line is an old, five-room home, in "dire need of repair." It consists of 1100-1200 square feet. The access of this residence to the state highway and the county road is unchanged. To the east of the home is a substantial, good barn, constructed primarily for the feeding of cattle, with a large area for the storage of hay above the ground level. It contains about 4,200 square feet. There are an electric pump, several small outhouses, and three cattle ponds. None of these improvements are taken, the right of way being considerably to the east of them. All of these improvements are on the 84-acre tract west of the highway.

The 34 acres south and east of the highway consist of about 9 acres in woodland, principally of unmerchantable timber, and 25 acres in improved pasture. The entire farm contains about 120-125 acres of improved pasture land.

The following is an outline of the testimony for both parties as to valuations of this property before and after taking, and the damages:

| For Commission: | Before Taking | After Taking | Damages |
|---|---|---|---|
| Clarence Boone | $22,000 | $15,400 | $ 6,600 |
| L. C. Kirkland | $21,000 | $15,000 | $ 6,000 |
| For Defendants: | | | |
| M. P. Carter | $71,350 | $26,225 | $45,125 |
| John Blackledge | $70,000 | $28,000 | $42,000 |

The witnesses for the Commission were qualified and experienced appraisers, and gave a reasoned analysis of the basis of their valuations. On the other hand, the witnesses for appellees had relatively little experience in property appraisals, and failed to give any substantial reasons to support their extremely high estimates of the value of this 138 acres cattle farm before the taking, or of the damages. For example, after a lengthy cross-examination, Blackledge was asked how he reached the figure of $70,000. He said: "Due to the location and type of soil and its value, and the improvements, that is what I guessed it is worth." Both he and Carter mentioned the size and the good soil, the condition of the land and pasture, its location to towns, schools and roads and the reduction in size of the farm as an operating unit, the difference between a profitable and unprofitable operation. ██ █ However, the test is the fair market value of the land before and after the taking, and does not include the highly speculative and uncertain profits which may be derived from a business. State Highway Commission v. Rogers, 236 Miss. 800, 112 So. 2d 250 (1959); State Highway Commission v. Ellzey, 237 Miss. 345, 114 So. 2d 769 (1969). Neither of appellees' witnesses could give any comparable sales of reasonably comparable property in the area to support their appraisals.

Even if we wholly discount any remaining value in the 34-acre tract east of the highway, which is cut off from the farm, and figure that the Commission is in effect taking that as well as the 20-acre right of way, a total of 54 acres, the verdict of $28,500 runs at a rate of $528 per acre for improved pasture land, with no structural improvements.

Carter figures that the taking of 54 acres depreciates the property by ⅔ of its original value, although only 9/23 of the total farm is taken. His total appraisal of $71,350 put a valuation on the land of $517 per acre and a value of $828 per acre for the 54 acres taken and affected by the condemnation.

Blackledge figured the taking depreciated the property by about 3/5 of its total original value, although only 9/23 is taken. His before-taking value of $70,000 comprises $507 per acre for the entire farm; for the 54 acres taken and affected, $777 per acre.

The gross excessiveness of these figures and the jury's verdict becomes particularly apparent when it is noted that no improvements whatever are taken, except some undescribed fences; and appellees' witnesses could give no comparable sales to support their appraisals.

Appellees' brief makes only an indefinite argument in support of the amount of the verdict. It is that Miss. Constitution Sec. 31 provides the right of trial by jury shall remain inviolate. However, Secs. 144-177 of the Constitution vest the judicial power of the state in this Court and the trial courts. ██ █ It is well established that judicial review of the adequacy of evidence to support a verdict is a necessary incident to the right of trial by jury. Williams v. Hood, 237 Miss. 355, 114 So. 2d 854 (1959); Yazoo and M. V. R. Co. v. Scott, 108 Miss. 871, 897, 67 So. 491 (1914); Faulkner v. Middleton, 186 Miss. 355, 365-366, 188 So. 565 (1939). ██ █ It is the duty of this Court to determine whether there is any reasonable, believable evidence which will support the

verdict in this case. A proper exercise of the judicial function does not require us to believe the incredible. Appellees' witnesses are competent to testify, but because of the extreme, unreasonable, and unsupported valuations which they placed on the land, as analyzed above, their testimony has little probative value. No. 41,568, Miss. State Highway Commission v. Stubbs, decided November 7, 1960; No. 41,579, McDuffie v. Miss. State Highway Commission, decided November 7, 1960.

After a careful consideration of this record, we hold that the verdict of $28,500 is so grossly excessive as to evince bias, passion and prejudice by the jury, and cannot be affirmed by this Court. State Highway Commission v. Rogers, *supra;* Miss. State Highway Commission v. Ellzey, *supra;* Miss. State Highway Commission v. Taylor, 237 Miss. 847, 116 So. 2d 757 (1959); Miss. State Highway Commission v. Pittman, 238 Miss. 402, 117 So. 2d 197 (1960). As was said in *Taylor*: "No reasonable man in an impartial and objective search for truth could find damages in that amount in this case."

In summary, the judgment of the circuit court is reversed and the case is remanded for a new trial on damages, unless within ten days from this date appellees accept a remittitur of $11,000, thus reducing the award to the aggregate sum of $17,500; in the event appellees accept such remittitur, the judgment will be affirmed as modified; otherwise, it is reversed and remanded.

Reversed and remanded, unless appellees accept specified remittitur.

*McGehee, C.J.,* and *Kyle, Holmes, Gillespie* and *McElroy, JJ.,* concur.

LEE, J., Dissenting:

Of course the State Highway Commission had the right and power to take the right of way here involved. But, under Sec. 17 of the Constitution, due compensa-

tion must be made therefor. The tribunal, set up to determine the damage in such a case, is composed of a judge and a jury. Two juries passed on this question. One awarded $32,000 and the other $28,500. The difference in the opinions of the witnesses of both the Commission and the landowners, as to damage, was so great as to appear almost incredible. The juries obviously rejected both versions of the litigants. However those jurors, twenty-four of them, viewed the property. Of course jurors are not infallible, and some of them go astray just as all other men.

I am inclined to think that under the showing in this record, even the second verdict is somewhat excessive. But I am not a magician, and I am not able to devise a formula under which I can lay my hand on my heart and come up with a figure which I can say, in good conscience, is due compensation to these landowners·for the damage which they will suffer by reason of this seizure. To say the least of it, I cannot accede to a judgment which will have the effect of holding that the second jury was wrong by at least $11,000. Under the circumstances, I think the case should be simply remanded for a new trial.

ARRINGTON, Justice, Dissenting:

With deference, I disagree. In the majority opinion it is stated: ''To the south and east of this non-access highway, there are 34 acres which are separated from the remaining 84 acres of the place to the west of the highway. Although the Commission is condemning access rights, there would be a permissive user of a viaduct under the highway from the western 84 to the eastern 34 acres. However, since the use is permissive only, the effect of the highway is to cut off access to the east tract, which is bounded on its east side by the Mississippi State Hospital at Ellisville. Hence, looking at the matter most favorably to appellees, the Highway

Commission is condemning a right of way of 20 acres, and cutting off appellees' access to the 34 acres east of the highway.''

I do not think that the permissive use is of any value whatsoever. In the trial of this case it was suggested by the court that counsel for appellant could amend its petition to allow permissive use, whereupon counsel for the Commission stated to the court, ''No, sir, we are condemning right of access.'' Thus it can be seen that the permissive use amounts to nothing, because it could be withdrawn at any time. I am of the opinion that the appellees were entitled to damages in the sum of at least $20,000.

HALL, J., Joins in this dissent.